20-1480 Good afternoon, your honors. Edward Sivan for the Plaintiff Appellant. Plaintiff Mr. Mayanduenas is appealing the District Court's order dismissing his lawsuit for failure to prosecute, essentially for failing to keep the Court and Defense Counsel apprised of his current address during a period of less than four months immediately after his release from prison when he was intermittently homeless. It is Plaintiff's position that the lower court abused its discretion in dismissing his case. Your honors, Plaintiff commenced his lawsuit pro se in September of 2018 while he was incarcerated. And despite having a documented history of mental illness and speaking very little English, he managed to file a complaint and then an amended complaint, both of which survived scrutiny by the District Court. While still incarcerated, Plaintiff then successfully opposed the defendant's re-answer motion for summary judgment. Plaintiff was then released from prison on May 21, 2019, and in the week immediately preceding his release, he sent three letters to the court notifying the court of his upcoming release and expressing his unequivocal intention to continue his lawsuit, hopefully with the assistance of counsel. Unfortunately, shortly after his release, Plaintiff was in a state of hard times and was homeless for a period of time and did not remain in contact with the court or Defense Counsel despite language and prior court orders directing him to do so. Unbeknownst to Plaintiff, on September 9, 2019, which is less than four months after his release from prison, less than four months after his last written communication with the court, and incidentally six months before the discovery cutoff date, the Magistrate Judge Suespante issued a report and recommendation that Plaintiff's case be dismissed for failure to provide the court with his current address. Plaintiff fortuitously learned of this report and recommendation when he walked into our office and we checked out his case on PACER. We then timely objected on behalf of Plaintiff to the R&R as soon as we saw that notice. Defendants did not even oppose Plaintiff's objection, but the District Court nevertheless adopted the Magistrate's recommendation and dismissed the case. The Your Honors, Plaintiff deserves his day in court. Our brief addresses at great length how consideration of the so-called five Drake factors compels a reversal of the lower court's order. Now we can debate that issue back and forth and defendants have attempted to do so in their brief, but at the end of the day, we're all here to do justice and any reasonable interpretation of that concept under the particular circumstances of this case requires that Plaintiff be allowed to continue with his lawsuit. At worst, this was an unintentional oversight by Plaintiff during a time that he was vulnerable, intermittently homeless, and had very limited resources. He now has a lawyer, me, he has a stable living environment, and he and I are ready, willing, and able to continue with this case expeditiously, so I respectfully request that the court give Plaintiff the opportunity to do so. Thank you. Thank you, Mr. Sivin. Judge Rodger, any questions? No, thank you. Judge Kaplan? No, thank you. All right. I have one question. These so-called 41B factors, I take it there's no doubt that in adhering to 41B in a rigorous way, you would not prevail, right? Perhaps not, Your Honor. Yeah. So what is it, what's your best argument for deviation from the 41B factors? I guess my best argument, Your Honor, would be that the court certainly had discretion, and considering all the circumstances, this was an abuse of discretion. You know, the purpose of the statute is to dismiss cases where there's been some type of malfeasance on behalf of the litigant. This is the furthest from that. Mr. Mayanduenas was fully invested in this case. He worked on it pro se, diligently, while he was in prison. According to the docket sheet, he sent no fewer than five letters to the court during the several months immediately preceding his discharge. People get out of prison. They fall on hard times. It's understandable. And, you know, there was a brief period, less than four months, where he didn't keep in touch with the court. He apologized for that. It wasn't willful. It wasn't intentional. And in the interest of justice, I think this court should conclude that the lower court abused its discretion in dismissing the case. Help me, Mr. Sivin, by just very briefly explaining what proceedings were held, what kind of proceedings were held on this matter by the district court. I guess first, the magistrate judge. But what exactly was before the magistrate judge at that point? Okay. Initially, Mr. Mayanduenas filed an application to proceed as a court person that was granted. He filed an appeal to the district council that was denied. The district judge reviewed his initial complaint to see if it passed muster. And he concluded that it did under the Eighth Amendment. In response to a letter from defense counsel, the court then reviewed plaintiff's amended complaint to see if it passed muster. And the district court concluded it did. The defendants then moved to, for summary judgment, pre-answer on the grounds that Mr. Mayanduenas did not exhaust his administrative remedies. And the court concluded that under Mr. Mayanduenas' circumstances, those remedies were not available to him. So that motion was denied. Um, and that was it. Was everything done on papers? Or was there any evidentiary hearing of any kind? No, no evidentiary hearings. Okay, so, so how would you describe the proceedings before the magistrate judge? She issued a report and recommendation, right? Yes, that's correct. And what did she have before her at that point? Uh, she, at that point, she had before everything that I've just indicated, to your honor. All right. So the R&R goes to the district judge. Yes. Chief Judge Sutterby. And what kind of proceedings of any took place before Judge Sutterby? He had the same record before him, right? Uh, he had one additional thing. Mr. Mayanduenas walked into our office on, I think, almost the 14th day after the R&R had been issued. We immediately got out a letter over his signature to the court saying, wait a second, I have a place now, I'm sorry, this is my address, and I object to the report and recommendation. So Judge Sutterby also had that in front of him. But otherwise, he had the same thing as the magistrate judge had. And that letter, was that, in your view, timely? No. Yes, it was. That was timely. That letter was timely? Yes. And did the district court base any decision on the question of timeliness? No. Okay. No. All right, fine. Let's hear from Jonathan Hitsuse. Mr. Hitsuse? Good afternoon, Your Honors. Can everybody hear me okay? Yes. Okay, great. I think the best place to begin with this argument is to break out that this appeal implicates two orders. There's the initial order of dismissal, and then there's a subsequent order on reconsideration. And that's important because the initial dismissal, it's our position that the court should not dismiss the case properly before this court. You heard any number of arguments just now about why the five Drake factors were wrongfully applied. But the objection to the report and recommendation, you could find that on page 94 of the appendix. It simply says, I object and respectfully request that the court not dismiss the case. And we can split hairs as whether he was pro se or not, whether the district court decided to review the R&R de novo or not. But under no basic preservation precedent is, I object, sufficient to preserve an argument. We would say that the court certainly can review in the interest of justice, that review is abbreviated. But frankly, whether the review is in abbreviated form or full-on abuse of discretion review, what this boils down to is a situation where reasonable minds may differ. I understand that abuse of discretion, as this court has remarked, doesn't enable the court to blindly accept the district court's judgment, but it also doesn't allow the court to substitute its judgment for that of the district court. In the cases where you have vacated on an abuse of discretion standard, failures to prosecute dismissals, usually the situation implicates either that the district court blindsides the defendant with the dismissal, the defendant really, or the plaintiff, I'm sorry, the plaintiff didn't see it coming, or the court finds that the Whereas here, we have a district court that went through the Drake factors in some level of detail, and certainly the appellant disagrees with that conclusion, but disagreement isn't going to be good enough, particularly in light of what the court knew at the time of that initial dismissal, which is really not a whole lot. One thing that distinguishes this case from some of the others in the appellant's brief is that up until the moment of dismissal, there's no explanation. The appellant never comes forward and says, I vanished in May because... What the court does know is that as of May 21st, it was unable to get in touch with the appellant, mail was getting returned, and that the inability to reach the appellant continued until November 6th. That's 169-day period, not a period under four months, as the appellant claims, and that period exceeds the four-month presumptive period for failure to prosecute under the Northern District's local rules. Of course, the presumption is rebuttable, but the appellant didn't do that here because they didn't proffer any kind of explanation for this court correspondence with the appellant warned him that he needed to keep his address updated, and that failure to do so would result in dismissal, and we know that while incarcerated, at least, the appellant did diligently pursue this case. It was only after incarceration that he vanished. With respect to the prejudice factor, the law is apparent that when you have an unexplained or unreasonable delay such as this one, prejudice is presumed. So while the appellant faults us for not responding to the report and recommendation, we really didn't need to at that point. I'll say that if there's any question about prejudice, it's apparent that the discovery period was cut short, and this court has remarked in past cases that situations where of prejudice. We concur that all litigants are entitled to their day in court, but as the district court remarked here, the appellant was given his day in court at the summary judgment stage, and his case was allowed to survive, notwithstanding non-compliance with the rules there in deference to his pro se status. Afterwards, he disappears without explanation. When he resurfaces and provides an address, I think it's important to remind the court that that address was the wrong address. Of all the things to be careful about knowing that you're facing dismissal for failure to provide an address, it's somewhat inexplicable to have gotten that wrong, whether it's an honest mistake or not. And frankly, the appellant did not apologize until the post-judgment motion, so the court balances these considerations against the fact that there are hundreds of other litigants in the Northern District who also are entitled to their day in court, and they needed to be heard as well. And finally, with consideration of other factors, the court does go through other factors, including dismissal without prejudice and reasons on the record why those are inappropriate. So, turning to the motion for reconsideration, this is the first time that the appellant does proffer an explanation. The problem is that a motion for reconsideration is a heightened standard, and this explanation and these facts and arguments could have been provided earlier, but weren't. That's not a sufficient ground for reconsideration under Rule 59, the rule under which the court construed it. The court nevertheless considers whether there's clear legal error or manifest injustice. We would defend the court's rulings as to both. There's no clear legal error, whereas here, you have an appellant who agrees that the court applied the right legal standard. He just disagrees with the results that the court reached having applied that standard. And as to manifest injustice, we acknowledge that there is an explanation on the record, and we certainly don't want to be heard to minimize the plight of inmates who are reintegrating into society. It's a difficult experience, both in New York and around the country, but the problem in this particular case is that the appellant's proffer of information about his plight actually works to undermine his cause for manifest injustice. You can find his affidavit on pages 108 through 109 of the record, and in it, he discusses some of the appointments that he has to go to, and then volunteers that he's now in a stable situation, or at least has stable housing. But the problem is that, I believe docket number 54, it's acknowledged that that housing has been in place since July, and there's no explanation on why he wasn't able to get in touch with the court in July. Similarly, he acknowledges that he went to go visit the attorney in June. All that was required at that point was a quick check on the docket, and they would have seen that there was an order or a report and recommendation on the dispositive motion for summary judgment. So while the appellant stands before the court now and says that they are willing, able, and prepared to go forward and litigate this case, there was nothing in front of the district court in real time to that effect. And therefore, even if there are other judges similarly situated who might have saw fit to give the appellant a second chance, the district court's decision here is readily defensible, and we would ask that this court affirm as to both orders. Thank you. Thanks very much. Judge Raji, any questions? Yes, I do have some questions. Counsel, you alluded to the Drake factors. Now, are those factors are all geared toward identifying when we have the extreme circumstances that would warrant dismissal, correct? My understanding is that if the Drake factors, if the Drake factors point to dismissal, then that extreme kind of circumstances is implied. Right, but that's what we're looking for. We're looking for extreme circumstances. Isn't that what Drake itself says? It does. I think it's more of a cause and effect, though. All right, I have a number of questions for you, as long as I understand Drake correctly. On May 20th, the appellant advised the court that he was about to be released, correct? That's correct. And on May 21st, the R&R was sent to the prison where he had been released from, correct? That's correct. How is it, then, that May 21st is the appropriate date for identifying when he was no longer prosecuting the case? Because the district court was not aware that he actually had been released until May 23rd, when it received correspondence confirming the fact. Many months later, it used May 21st as the starting date. Is that correct? Yes, Your Honor. And I'm suggesting to you that that overcalculates the amount of time that he was not prosecuting the case. Your Honor, if we look at May 21st, two things happen. One is that the appellant gets released without giving a forwarding address, and two, that is the date that the report and recommendation is sent to the appellant. The court doesn't know that he's been released at that point. But he knows it before November 25th, 2019, when it dismisses, right? It knows that he was released and not at Attica on May 21st. Yes, that's correct. Okay, stay with me. On May 21st, the only thing that the appellant had to do, according to the court's schedule, was to comply with a discovery deadline that I believe was into 2020, March 2nd, 2020. Is that correct? That's correct. That's the obligation that there was on this person, on this plaintiff, right? So how is anything that happened in 2019 a failure to prosecute? Well, the failure to prosecute and the noncompliance with the... No, no, stay with me on failure to prosecute. How is anything that happened in 2019 a failure to prosecute if there were no obligations on him in that period of time? Well, there are two answers to that. First is if the court cannot get in touch with him, then that does prohibit the case from going forward. The court needs to be able to keep apprised of where its litigants are. And then the second answer to that is that the failure to provide an address and the failure to prosecute are similar but distinct concepts. So even though it's technically a dismissal for failure to prosecute, it could equally be considered a dismissal for failure to comply with that rule. And if that's the case, then certainly measuring the period of delay from the moment of noncompliance would be reasonable. Well, I'll keep pursuing this. On September 9th, 2019, the sua sponte R&R recommending dismissal for failure to prosecute identified likely prejudice from the loss of witnesses and evidence. Again, how is that finding one that reasonably could be made when discovery did not have to be concluded for several months? How was there a risk of loss of witnesses and evidence at that point? It's through a condensed period, Your Honor. There was roughly a year and then that period was cut short by almost four months. No, no. But the plaintiff would have been entitled to serve his first notice of deposition in October, November of 2019. September of 2019 wasn't a loss of witnesses or evidence yet. And as I understand, I just talked about what plaintiff could do. The defendant hadn't tried to serve any notices of deposition if I understand the record correctly. Is that right? You do, Your Honor, but we didn't serve anything because like the court, we had no idea where the appellant was. So I don't see how that could be held against us. Nobody knew where the appellant was until November 6th when he provided the exact data. You did not go to the court and say the failure to know where he is is hampering our discovery ability, right? This was a sui spondi R&R. That's correct, Your Honor. That said, we wouldn't be required to file a motion. Courts can- I'm asking these questions apropos of what evidence is there to support a finding that there was a likely prejudice from the loss of witnesses and evidence. With respect to that particular finding of likely loss of witness and evidence, it doesn't appear that there was any imminent risk of that. And in our argument, we are resting on the fact that the discovery period was cut short. And would you agree that similarly prejudice to your case in defending was speculative for the same reasons? On that, Your Honor, I would not agree. First, let me say that we rely heavily on a rule announced in this court that when you have an unreasonable or unexplained delay, the prejudice can be presumed. Where you don't have the appellant arguing in the first instance that this delay really wasn't a big deal, it doesn't seem that we need to come and explain why it was a big deal. But that said, this court has also recognized, as have other courts of appeals, that situations that would make the discovery period- make discovery more difficult are a form of prejudice. And it's defensible that a finding that a shortened discovery period is a form of prejudice. We had, I believe it was close to a year, or I'm sorry, 10 months, and then we didn't. We had to do more with less. This involves scheduling depositions. It involves responding to the appellant's demands. We weren't going to start compiling the documentary information until we knew what exactly it was the appellant wanted. And that's time and resources that we might need to devote, either by working overtime or by shifting the discovery schedule. And so, it's not imminent, but at the same time, I wouldn't say that it's speculative, either. Certainly not for purposes of sua sponte, rebutting the presumption of prejudice. Well, in this case, though, you knew that there was now counsel communicating for the defendant, even if somewhat mistakenly, in the fall of 2019. And there was an actual entry of a notice of appearance on December 6th of 2019, correct? That's correct. But if I could add, Your Honor, that's after the initial dismissal. I understand that. What I'm getting to now is with discovery, the discovery deadline is still three months off at that point, March 2nd, 2020. Are you telling me that there was prejudice to your client? Yes, because we didn't know at that point. No, no. Go ahead. Between December and that discovery deadline in March, as of December, when counsel notices his appearance, we still have no idea what discovery is going to entail. So, you have a district court that's scheduling discovery. It's setting a time frame based on its experience with these type of cases. This seems like a reasonable period to allow discovery to happen. As of December, that period has been cut very short. It's only about three months now, and that's a very short amount of time to communicate, to compile the information, to schedule the depositions. And in all likelihood, if we were using that notice of appearance in December as the jump-off date, we would have to reschedule or extend the discovery period. Thank you, Judge Cabranes. I have nothing further. Judge Kaplan, any questions? Yes. For Mr. Hitzos, everything you've just said about the possibility of prejudice in response to Judge Raggi is theoretical, isn't it? There's nothing in the record to support it. Yes, Your Honor, but if I may, when we are speaking about presumptions, a presumption in and of itself is guidance on how a court should rule when the record is otherwise silent. Yes, of course, the case that you rely on, I think, for the presumption is Lyle, right? Lyle Theater? We rely on Lyle and we rely on Shannon, both of which came from this court. In addition, there are several other decisions from other courts of And they, well, they don't say exactly that, do they? They say it may be presumed. Isn't that fair enough, Your Honor? The judge was not obliged to presume it. The judge was not obliged to presume it, but if we're operating under an abuse of discretion standard or an even more abbreviated form of review, you need a clear error of law. And a presuming prejudice wouldn't be a clear error of law. Is there anything in the record that suggests that the defendants sought any discovery during this period in which the plaintiff was incommunicado? No, Your Honor, and that's because the defendant was incommunicado, or I'm sorry, the plaintiff was incommunicado. Is there anything in the record to support the assertion that the reason it didn't seek any discovery was because the plaintiff was incommunicado as opposed to letting sleeping dogs lie? There is not, Your Honor, and for that, I would fall back on our presumption argument. It was on the appellant in the first instance to rebut the presumption of prejudice, and had he done so, we would likely have come forward and made our case. And the last analysis is no reason for us to conclude that the defense would be handicapped in any way if this were overturned. Isn't that true? Well, to the extent that discovery would have to begin anew well over a year past the discovery deadline, or I'm sorry, on the verge of a year from the discovery deadline, that would be a form of prejudice. Discovery fines are very frequently extended in the district courts, aren't they? They are, Your Honor, and yes— I have my time doing it. Fair enough, Your Honor, but that has not prevented both this circuit and other circuits from recognizing that prolonging discovery can be a form of prejudice. I'm thinking in particular about a case out of the Seventh Circuit called Schaeffer, where they had to reset the discovery deadline. Now there, I will concede that the delay had extended past the deadline, whereas here we still had a couple of months, but the court there recognized that having to shift the discovery deadline was a sufficient form of prejudice for the purposes of this five-factor analysis, despite the fact that it happens with somewhat frequency. And when we're talking about a likelihood of prejudice, not certain prejudice, it's reasonable for the district court to assume, and reasonable for this court to defer under an abuse of discretion standards, that the likely result here would be to push back that discovery deadline. On another— Well, thank you. I have nothing else. Thank you. We'll hear from Mr. Sivin, who's reserved two minutes and who may be able to provide his own gloss on the argument by opposing counsel. Yes, Your Honor. I'd like to just move briefly from the theoretical to the actual. In actuality, this is a routine excessive force case with one cause of action, violation of the Eighth Amendment. We could have easily wrapped up discovery by March 2nd, 2020. Everything that happened in this case happened inside the prison. I think it's reasonable to assume that the AG's office had access to, if not actual possession of, all of the documents that are typically generated in a case like this. And a use of force report, and injury to inmate report, and all the witnesses were inside the prison. And so the AG's office similarly had notice of all the witnesses. This is about as straightforward a case as you can get, and there's no reason why we could not have wrapped it up by March 2nd of 2020. May I ask one further question of this counsel, please? Yes, of course. When Mr. Mayandranas was released, was he on parole? Let me just check. I believe he was, and I believe the purpose of the question would be that therefore the state would have knowledge of his address? Exactly. Yeah. I'm trying to go on the DOC's website right now. And in the event I can't get it in time, I think the court can take judicial notice of that website as well. Give me just a minute. Or maybe defense counsel knows that answer offhand? Mr. Hipthos, if I may, do you know? I am searching the exact same website right now. It looks like he was released to parole. So presumably he was reporting to a parole officer? Your Honor, is that for me or for my adversary? Both of you. I don't know the answer to that. I'm not as familiar with the criminal procedure as other lawyers might be. But I would assume if he is on parole, then the state would have at least some additional address besides Attica to which to send a letter. So it's not like he totally disappeared. This is Judge Cabranes. Mr. Sivin, I have a somewhat informal question. Are you there, Mr. Sivin? Yes, I am, Your Honor. You now represent this plaintiff, is that right? That's correct. And you've represented him since when? Let's see. Well, we didn't file a notice of appearance when the objection to the report and recommendation was filed. We did that over his signature as an accommodation to him. The notice of appearance itself, it was very shortly thereafter because then we made the motion to for reconsideration, and we did that in our name. And let me ask you, I gather you intend or you to prevail here. You intend to continue to represent him, is that right? You're in touch with him? Absolutely, Your Honor. I mean, we've put a lot of work into this case, as you can see from our brief. Well, yes. One of the things that is striking in a way is the amount of, quote, litigation, unquote, of all these factors well beyond what one would expect. In a sense, at the threshold, my impulse is to say that we would be much further along in this case if the state had merely proceeded with you in the case on the other side. So what exactly are you asking of us, Mr. Simmons? What's the decree from this court that you seek? To have the complaint reinstated so that we could immediately get on with discovery and get this case to a trial. And you're prepared to do that? All right. I'm prepared to do it the day after this court issues an order. All right. All right. Judge Raji or Judge Kaplan, any questions? Nothing further from me. No, thank you. All right. Thank you. Well, we're pleased to have heard you, and we'll take the matter on.